UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CHARLES EDWARD RAY KENNEDY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  No. 3:20-CV-00295-JRG-DCP ) |
| ANDERSON COUNTY, TENNESSEE, and SOUTHERN HEALTH PARTNERS, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This is a former prisoner's pro se complaint for violation of 42 U.S.C. § 1983 in which Plaintiff claims that he was denied medical care pursuant to Defendants' custom or policy while in the Anderson County Detention Facility ("ACDF") [Doc. 7 at 5]. Both Defendants have filed motions for summary judgment [Docs. 22, 24]. In support of its motion, Defendant Anderson County filed exhibits [Doc. 22-1] and a memorandum [Doc. 23]. In support of its motion, Defendant Southern Health Partners ("SHP") filed a memorandum [Doc. 25] and relies on a declaration filed in support of Defendant Anderson County's motion [Doc. 24 at 1]. Plaintiff did not timely respond and therefore waived any opposition to these dispositive motions [*Id.*]. E.D. Tenn. LR 7.2; *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978). For the reasons set forth below, Defendants' motions for summary judgment [Docs. 22, 24] will be **GRANTED**, and this action will be **DISMISSED with prejudice**.

I.     STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010). However, a district court cannot grant summary judgment in favor of a movant simply because the adverse party did not respond. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court must, at a minimum, examine the motion to ensure that the movant has met its burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).

## II. PLAINTIFF'S ALLEGATIONS

In his amended complaint,[1] Plaintiff states that Defendants have a custom or policy of placing inmates on lists to see a doctor that led to a violation of his constitutional rights [Doc. 2 at 5]. Specifically, Plaintiff states that he has a metal pin sticking out of his left thumb that should have been removed on June 4, 2020, and this pin causes him constant and unavoidable pain and prevents him from participating in normal activities [*Id.*]. Plaintiff also alleges that health care providers' failure to provide him with timely and adequate medical care for this condition is "life threatening" due to infections and his related blood pressure issues [*Id.*]. According to Plaintiff,

---

[1] After filing his initial complaint herein on June 18, 2020 [Doc. 2 at 5], Plaintiff filed his sworn amended complaint [Doc. 7] pursuant to the Court's order [Doc. 6]. This is the operative complaint in this case, and the Court gives it the same weight as an affidavit for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a sworn complaint carries the same weight as an affidavit for purposes of summary judgment).

2

Defendants' custom or policy of denying adequate and timely medical care caused him to "probably have to have more surgery to remove his thumb," even though the thumb could have been salvaged [*Id.*]. Plaintiff claims that he repeatedly sought medical care but those requests were denied because of doctor lists [*Id.*].

II. **DEFENDANTS' EVIDENCE**

Defendant Anderson County has presented sworn proof that, upon Plaintiff being booked into the ACDF on May 15, 2018, he completed a medical form indicating that his only "medical or health" issue was "pin in thumbs and cut hand" [Doc. 22-1 at 2, 15]. The next day, while assisting the nurse with completion of his jail health forms, Plaintiff told a SHP nurse that on May 4, 2020, he received a pin in his left thumb at the University of Tennessee Medical Center ("UT") [*Id.* at 2, 16]. Neither of the relevant medical forms in the record indicates that Plaintiff notified medical or jail officials that he had high blood pressure [*Id.* at 2–3, 15, 16].

On May 18, 2018, a SHP nurse faxed a request for Plaintiff's medical records to "UT Ortho" [*Id.* at 3, 23–24]. The response indicated that Plaintiff had reported "left thumb pain without active extension of digit" and therefore underwent a procedure to repair his extensor tendon on April 20, 2020 [*Id.* at 3, 25–26].

On May 19, 2020, Plaintiff submitted a medical request in which he stated that his thumb ached and requested an Ace bandage, and a SHP nurse responded that medical staff could "come in and wrap your hand with a dressing for stability if needed, but the Ace bandage will not be approved at this time" [*Id.* at 3, 27]. The next day, a SHP nurse went to Plaintiff's cell to observe his left thumb and hand and Plaintiff told the nurse that his thumb was twitching uncontrollably [*Id.* at 3, 28]. The SHP nurse observed that Plaintiff's left thumb incision was dry and intact, and that he had no pronounced swelling in his left thumb or hand [*Id.*]. However, the SHP nurse

3

contacted UT to report these findings and prescribed Plaintiff three days of ibuprofen [*Id.* at 3, 28, 29, 30]. On May 21, 2020, a SHP nurse reported that she spoke to an individual from UT about Plaintiff's medical report, and this individual told her that there was "nothing left to do" for Plaintiff at this time, and that Plaintiff should report back to that office upon release [*Id.* at 4, 28].

Then, on May 22, 2020, Plaintiff submitted a medical request stating that he was going to be in the jail "awhile" and needed the pin taken out of his thumb [*Id.* at 4, 27]. A SHP nurse responded by telling Plaintiff that the medical staff had contacted his orthopedic surgeon, who had told them that there were no further orders at that time, and that Plaintiff should return to that office after release [*Id.*].

On May 26, 2020, Plaintiff filed a grievance claiming that he had been denied proper medical attention, and a nurse responded two days later by stating that Plaintiff had been seen on that day [*Id.* at 4, 31].

Plaintiff then filed several complaints about his Crohn's disease, and in one of those requests dated May 28, 2020, Plaintiff stated that he had not received anything for his pain [*Id.* at 4, 31]. In response, a jail official told Plaintiff that if he was experiencing pain or illness, he should put in a sick call so that medical could evaluate him, and Plaintiff responded by stating "I have" [*Id.*]. A jail official then responded by summarizing Plaintiff's medical forms and medical visits in the jail and again instructing Plaintiff to put in another sick call if he had more medical needs [*Id.* at 5, 31].

On June 3, 2020, Plaintiff filed a medical request stating that he had "not stopped experiencing pain since [he had] been detained," and a SHP nurse responded by stating that she could not treat him without orders, and that his orthopedist had told her that there was nothing to do [*Id.* at 5, 33]. Also on June 3, 2020, Plaintiff filed a grievance stating that he had "not stopped

4

experiencing pain since [he] [] arrived over [his] thumb," and a nurse responded that he had been seen, that the process had been explained to him, and that he could "place another sick call" if his medical issues continued [*Id.* at 5, 34]. Plaintiff appealed this grievance the next day stating that he would take the next step, and a nurse responded to this appeal by again telling him that they had followed up with his surgeon and that "there [were] no follow ups or new orders until release per the surgeon" [*Id.*].

On June 18, 2020, Plaintiff signed his original complaint herein [Doc. 2 at 5] without first appealing any of his grievances to the Jail Administrator [Doc. 22-1 at 6, 27, 31, 33–34], as he could have done under the ACDF grievance policy [*Id.* at 43].

On July 10, 2020, Plaintiff filed an appeal of his June 3 grievance in which he stated only "stay in pain," and a jail official responded by stating that, per a conversation between Plaintiff and the jail official, the issue was resolved [*Id.* at 6, 34].

Also on July 10, 2020, a SHP nurse contacted UT regarding a pin protruding from Plaintiff's left thumb [*Id.* at 6, 35]. She received a response indicating that Plaintiff's surgeon was on vacation that week and the following week and left a message asking whether another provider could see Plaintiff [*Id.*].

Then on July 12, 2020, Plaintiff filed another appeal of his June 3 grievance, again stating only "still in pain," and a jail official responded by acknowledging Plaintiff's frustration but stating "we are obligated to follow a doctor's order as we are not licensed to practice medicine. If the doctor stated no follow up or medication to be given we must follow those orders" [*Id.* at 6, 36].

Next, on July 13, 2020, a SHP nurse followed up with UT and learned that Dr. Smith would see Plaintiff "for a K wire removal" on July 22, 2020, after the doctor returned from vacation [*Id.* at 6, 35].

5

On July 16, 2020, Plaintiff filed another appeal of his June 3 grievance, stating that his doctor had said he should follow up upon release but that this was "not coming up anytime soon and this pin is past due on its removal" [*Id.* at 6–7, 36].

On July 22, 2020, Dr. Smith removed the pin in Plaintiff's thumb, diagnosed him with a "healed fracture," and stated that Plaintiff had "no restrictions" [*Id.* at 7, 37].

On July 22, 2020, apparently after his return from the procedure removing the pin, Plaintiff filed a grievance stating, "I'm in pain," and a nurse responded on that same day that she would check Plaintiff's doctor's records for new orders [*Id.* at 7, 38]. Later that day, Plaintiff filed a grievance stating that his pin was removed that day but he had been refused anything for pain, and a SHP nurse responded the next day by telling Plaintiff that he must follow the proper procedure for grievances by filing one with a medical officer and giving the officer a chance to resolve it [*Id.* at 7, 39]. Plaintiff then filed a new grievance on July 23, 2020, stating that the officer had had more than twenty-four hours to resolve his grievance and that his grievance was for medical pain that needed to be resolved [*Id.*]. On July 24, 2020, a SHP nurse put Plaintiff on ibuprofen for three days [*Id.* at 7, 29].

On July 30, 2020, Richard Parker responded to Plaintiff's July 16 appeal of his June 3 grievance by stating that the pin was removed on July 22, 2020, that Plaintiff had no restrictions per the medical department, that the grievance was resolved, and that Plaintiff was to submit a medical request to evaluate some swelling in the thumb [*Id.* at 8, 36]. Also on July 30, 2020, Richard Parker responded to Plaintiff's appeal of his July 23 grievance by stating that, per a conversation between himself and Plaintiff, Plaintiff did not receive medication for two days before receiving ibuprofen for three days, Plaintiff was submitting a new grievance regarding pain, and the grievance had been resolved [*Id.* at 7, 39].

On August 1, 2020, Plaintiff filed a new medical request asking, "have you all asked my doctor about the pain I am experiencing," and a SHP nurse responded by stating that she saw him on sick call and would give the doctor his information [*Id.* at 8, 38].

Plaintiff next appealed his July 22 grievance by stating that he had sent another request and received one ibuprofen in the time since he had seen a nurse and asked that someone call his doctor regarding what to do [*Id.* at 8, 40]. But as the July 22 grievance had been closed, Plaintiff had to file a new grievance [*Id.* at 8, 43]. As such, the response to this appeal was only "[t]his grievance is closed" [*Id.* at 8, 40].

On August 5, 2020, Plaintiff filed a medical request asking if a medical provider had called his doctor about his pain, to which a SHP nurse responded on August 6, 2020, that ibuprofen had been ordered for Plaintiff twice daily for five days and would begin that night [*Id.* at 8, 29, 45].

On August 6, 2020, a SHP nurse examined Plaintiff and noted that he had no swelling [*Id.* at 8, 35].

On August 11, 2020, Plaintiff submitted a medical request asking for an appointment to check his finger because he was still in pain, and a SHP nurse responded that she would add him to a list to speak to the facility provider [*Id.* at 9, 46].

On August 19, 2020, Plaintiff saw a SHP doctor, who ordered an x-ray of Plaintiff's thumb and placed him on Tylenol [*Id.* at 9, 29, 47]. On August 20, 2020, Plaintiff received a thumb x-ray, and the notes from that x-ray establish that it showed a "[n]ormal left hand" [*Id.* at 9, 48].

Plaintiff did not file any other medical requests or grievances regarding his thumb and was released from the ACDF on December 22, 2020 [*Id.* at 9, 11]. While he was in the ACDF, Plaintiff never complained of blood pressure or infection issues [*Id.* at 10].

7

Case 3:20-cv-00295-JRG-DCP   Document 26   Filed 07/27/21   Page 7 of 11   PageID #: 196

At all times relevant to this action, the ACDF's policy was to provide its inmates with "reasonable and necessary medical care," and none of its employees or agents denied Plaintiff medical care [*Id.* at 10, 49–50].

### III. ANALYSIS

Defendant Anderson County first seeks summary judgment in its favor on the ground that Plaintiff did not exhaust his available administrative remedies prior to filing this action as the Prison Litigation Reform Act ("PLRA") requires [Doc. 23 at 12–14]. Also, both Defendant Anderson County and Defendant SHP seek summary judgment in their favor on the ground that Plaintiff cannot establish a violation of his constitutional rights, or that any custom or policy of Defendants caused any such violation [*Id.* at 15–25; Doc. 25 at 3–11]. For the reasons set forth below, both Defendants are entitled to summary judgment.

#### A. Failure to Exhaust

As set forth above, Defendant Anderson County seeks summary judgment in its favor based on Plaintiff's failure to exhaust his available administrative remedies prior to filing this action. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requires "proper exhaustion" of prisoners' administrative remedies for all claims. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). As such, prisoners must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88.

To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving his grievance and follow the "'critical procedural rules'" in a manner that allows

prisoner officials to review and, where necessary, correct the issues set forth in the grievance "'on the merits.'" *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Woodford*, 548 U.S. at 81, 95)). "There is no uniform federal exhaustion standard [and] [a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

Defendant Anderson County has set forth proof that Plaintiff did not appeal his grievances regarding the alleged denial of medical care in the ACDF to the Jail Administrator[2] prior to filing his original complaint herein, despite having the ability to do so under the ACDF grievance policy [Doc. 22-1 at 1–6, 42–44]. In response, Plaintiff has not presented proof from which a jury could find that he exhausted all available ACDF administrative remedies prior to filing this action. Accordingly, Defendant Anderson County is entitled to summary judgment on this ground.

### B. Eighth Amendment Violation

As set forth above, both Defendants also seek summary judgment on the ground that Plaintiff cannot establish a violation of his rights under the Eighth Amendment, or that any custom or policy of Defendants caused any such violation.

For a municipality or corporation acting under state law to be liable for a violation of constitutional rights, the plaintiff must establish that the entity's custom or policy was the moving force behind that violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (holding that, like a municipality, a private corporation acting under color of state law may not be liable under § 1983 for constitutional

---

[2] While the ACDF grievance policy states that Plaintiff could have appealed his grievances to the "Jail Administrator" and Richard Parker's declaration identifies his job position at the ACDF as "Chief Jailer," Mr. Parker's declaration also implies that he was the individual responsible for second-level, final appeals of ACDF grievances [Doc. 22-1 at 1, 6, 43]. The record supports this assertion, as Mr. Parker responded to grievance appeals that Plaintiff filed after filing his complaint herein [*Id.* at 36, 39]. Regardless, the sworn copies of Plaintiff's grievances in the record establish that he did not appeal his grievances beyond the initial level prior to filing his original complaint herein despite having the ability to do so [Doc. 2 at 5; Doc. 22-1 at 27, 31, 33–34, 43].

9

violations based upon a theory of *respondeat superior*, but rather may be liable only where its custom or policy caused a constitutional violation) (citing *Monell*, 436 U.S. at 691)). "There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).

Even if the Court could construe the evidence in the record to establish a violation of Plaintiff's Eighth Amendment rights based on deliberate indifference to a serious medical need, Plaintiff's allegation in his amended complaint that Defendants' custom or policy caused a denial of medical care to him in violation of his constitutional rights is conclusory and speculative, Defendants have presented sworn proof that the ACDF's policy was to ensure that inmates received "reasonable and necessary medical care" [Doc. 22-1 at 10, 49–50[3]], and Plaintiff has not come forward with any evidence to rebut this proof in response to Defendants' motions for summary judgment. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (setting forth the ways a plaintiff may establish that a custom or policy caused a violation of his constitutional rights (citation omitted)). The Supreme Court has found that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Accordingly, Defendants are entitled to summary judgment on this ground.

## IV. CONCLUSION

---

[3] While Defendant SHP states in its motion for summary judgment that it relies only on the declaration of Richard Parker [Doc. 24 at 1], Defendant SHP's memorandum in support of its motion for summary judgment also cites the medical records that Defendant Anderson County filed in support of its motion for summary judgment [Docs. 25]. Regardless, the Court "may consider other materials in the record" in considering a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

For the foregoing reasons, Defendants' motions for summary judgment [Docs. 22, 24] will be **GRANTED** and this action will be **DISMISSED with prejudice**. Further, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and that Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on any subsequent appeal.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE